## STATE OF CONNECTICUT *v.* GREG STRICKLAND
## (14593)

Foti, Landau and Schaller, Js.

Argued March 18—officially released September 3, 1996

*Kent Drager*, assistant public defender, for the appellant (defendant).

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of the trial court revoking his probation. The defendant claims that the trial court improperly (1) found him to be in violation of probation because there was insufficient evidence, (2) failed to disqualify itself, (3) denied him the right personally to address the court, (4) deprived him of his right to counsel, and (5) refused to order an updated presentence investigation report. We affirm the judgment of the trial court.

The following facts adduced at the probation hearing are relevant to this appeal. On November 17, 1988, the defendant pleaded guilty to kidnapping in the second degree in violation of General Statutes § 53a-94, assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). The trial court sentenced the defendant to the custody of the commissioner of correction for an effective sentence of eleven years, suspended after four and one-half years, and placed him on probation for three years.

On November 1, 1992, the defendant was released from the custody of the commissioner of correction. On November 2, 1992, the defendant reported to his probation officer, Iris Santiago, who reviewed with the defendant the conditions of probation to which the defendant had agreed. The conditions included, inter

alia, complying with criminal laws and reporting as directed by a probation officer.

The defendant failed to report to Santiago as directed on November 18 and December 16, 1992, January 13, February 3, March 17, June 9, July 17, August 25, October 6 and November 17, 1993, and January 11, February 16 and March 9, 1994. The defendant did report to Santiago as directed on April 21, May 12, July 21, September 8, October 20 and December 14, 1993, and January 19, 1994. The defendant also reported on December 18, 1992, February 5 and June 6, 1993, and March 16, 1994.

On March 10, 1994, the defendant was involved in an incident at the two bedroom apartment of Theodosia Provite. At 2 a.m., the defendant, who had known Provite for two years, stopped at her apartment. Provite was with Maurice Bacote in her upstairs bedroom. Provite's daughter was sleeping in the other upstairs bedroom. When Provite opened the front door for the defendant, he walked past her and went upstairs.

When the defendant reached the top of the stairs, he was met by Bacote. The defendant told Bacote: "Get your stuff and get out." Bacote replied: "No, get your stuff and get out." The defendant then said: "I know you don't have a gun. Shoot me." Several gunshots were then fired. After the shooting stopped, Provite, who had escaped to her kitchen, heard someone run down the stairs and out of the apartment. She then heard the defendant calling for help. She called 911 and went upstairs.

Provite found the defendant lying on the floor in the doorway to her daughter's bedroom. The defendant gave her a .38 caliber gun and told her "to put it up." Provite wrapped the gun in a towel and put it in her closet. Emergency medical technicians took the defendant to Yale-New Haven Hospital. The defendant had been shot in the thigh and the abdomen.

Police later discovered six bullet holes in the door to Provite's daughter's bedroom. The wall across the hall from the daughter's bedroom contained two bullet holes. Detective Robert Benson found five .38 caliber shell casings, a 9 millimeter shell casing, and two 9 millimeter bullets in the daughter's bedroom. He also found a 9 millimeter shell casing and three .38 caliber bullets in the hallway. Benson removed a 9 millimeter bullet from the bullet proof vest that the defendant was wearing and two .38 caliber bullets from the hallway wall opposite the daughter's bedroom.

Benson also found a .38 caliber gun wrapped in a towel in the closet of Provite's bedroom. The gun contained a cartridge housing two bullets. An empty 9 millimeter cartridge was found wrapped in the towel. The serial number on the .38 caliber gun had been drilled out and obliterated. The defendant did not possess a permit to carry a firearm.

Santiago prepared an arrest warrant application predicated on the defendant's failure to report as directed on February 16 and March 9, 1994, and for the commission of criminal attempt to commit assault in the first degree, altering or removing an identification mark on a pistol or revolver, risk of injury to a child, and carrying a pistol or revolver without a permit. By an information dated December 8, 1994, the defendant was charged with a violation of probation pursuant to General Statutes § 53a-32. By amended information dated January 25, 1995, the defendant was further alleged to be in violation of probation for criminal possession of a firearm.

On February 6, 1995, the trial court found, by a preponderance of the evidence, that the defendant failed to report as directed to his probation officer on February 16, March 9 and March 10, 1994. The trial court further found that the defendant had been carrying a

pistol or revolver without a permit in violation of General Statutes § 29-35 (a),[1] had obliterated the identification number on a pistol or revolver in violation of General Statutes § 29-36[2] and had been in criminal possession of a firearm in violation of General Statutes § 53a-217 (a).[3] The court concluded that the beneficial purposes of probation were not being served and imposed the remainder of the defendant's sentence, six and one-half years.

## I

The defendant claims that the trial court improperly found that he had violated probation because there was insufficient evidence of the violations. To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his probation. *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). Where the legal conclusions of the trial court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980). Where the factual basis of the court's decision is challenged, we must

[1] General Statutes § 29-35 (a) provides in pertinent part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[2] General Statutes § 29-36 provides in pertinent part: "No person shall alter, remove or obliterate the name of any maker or model or any maker's number or other mark of identification on any pistol or revolver. . . ."

[3] General Statutes § 53a-217 (a) provides in pertinent part: "A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony, a class A felony, except a conviction under section 53a-196a, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196b, a class C felony, except a conviction under section 53a-87, 53a-152 or 53a-153, or a class D felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. . . ."

determine whether the facts are supported by the evidence or whether they are clearly erroneous. Id., 222–23. "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . ." (Internal quotation marks omitted.) *State* v. *Welch*, 40 Conn. App. 395, 401, 671 A.2d 379 (1996). We find no merit in the defendant's claims.

## A

The defendant first claims that his failure to report to the probation officer on February 16 and March 9, 1994, cannot properly be held to be violations of his conditions of probation. The defendant argues that the conditions of probation are analogous to the terms of a contract between the defendant and the state, and that the meaning of terms in a contract can be modified by the actions of the parties during the course of the contract. The defendant asserts, therefore, that because the probation department had accepted the defendant's erratic manner of reporting to the probation officer, it cannot now arbitrarily and retroactively choose two dates on which the defendant failed to report as violations of the condition that he report to a probation officer as directed.

The defendant claims that our Supreme Court analogized the conditions of probation to the terms of a contract in *State* v. *Davis*, supra, 229 Conn. 285. We do not read *Davis* as supporting the defendant's claim. In *Davis*, the court held that under General Statutes § 53a-32 the state has the burden of establishing a violation of probation by a fair preponderance of the evidence. Id., 295. In arriving at this conclusion, the court cited

*State* v. *Hodges*, 798 P.2d 270, 278 (Utah App. 1990), for the proposition that "the probation revocation procedure established by § 53a-32 is akin to a civil proceeding" and that " '[a]s in a contract dispute, proof of breach by the probationer is properly subject to a preponderance of the evidence standard' . . . ." *State* v. *Davis*, supra, 295–96, quoting *State* v. *Hodges*, supra, 278.

Pursuant to General Statutes § 53a-30 (c) "the court may modify or enlarge" a defendant's conditions of probation. *State* v. *Smith*, 207 Conn. 152, 169, 540 A.2d 679 (1988). This power is not given to the office of adult probation.[4] We conclude that the comparison used by the Supreme Court in *Davis* was limited to demonstrating that the preponderance of the evidence standard should be used under § 53a-32. Because the defendant concedes that he failed to report to Santiago as directed on February 16 and March 9, 1994, the trial court's finding was not clearly erroneous.

### B

The defendant next claims that there was insufficient evidence for the court to find that the defendant possessed the gun found in Provite's apartment. The defendant argues that, absent evidence of possession, the trial court could not find that he violated any criminal laws. At trial, Provite testified that the defendant handed her a gun and told her to "put it up." Moreover, Benson testified that he found bullet holes from two different guns on opposite sides of the upstairs hallway. Bullet holes from the .38 caliber gun were found in the wall on the opposite side of the hallway from where the defendant was found. These facts support the inference

---

[4] Pursuant to General Statutes § 53a-30 (b) "the Office of Adult Probation may require that the defendant comply with any or all conditions which the court may have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court."

that the defendant possessed the .38 caliber gun. We cannot conclude that the trial court's finding that the defendant possessed a firearm was clearly erroneous.

## C

The defendant next claims that the trial court improperly found that the defendant had obliterated the identification mark on the gun. General Statutes § 29-36 provides: "The possession of any pistol or revolver upon which any identifying mark, number or name has been altered, removed or obliterated shall be prima facie evidence that the person . . . in possession of such pistol or revolver has altered, removed or obliterated the same." The defendant argues that this presumption is unconstitutional and that because the state presented no evidence that he obliterated the identifying mark on the gun, other than his possession of the gun, the evidence is insufficient. We find no merit in this claim.

" 'The phrase "prima facie evidence" means evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove.' " *State* v. *Watson,* 165 Conn. 577, 595–96, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary* v. *United States,* 395 U.S. 6, 36, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969). We conclude that the presumption in § 29-36 is not unconstitutional. We conclude further, with substantial assurance, that the defendant's possession of the gun with obliterated markings demonstrates that it is more likely than not that he obliterated the markings.

## II

The defendant next claims that the trial court improperly demonstrated bias against the defendant and improperly failed to disqualify himself. The defendant argues that by expressing disbelief of the defendant's testimony and defense counsel's argument, the trial court deprived him of his due process right to a probation revocation hearing before a "neutral hearing body."[5] Because this claim was not preserved at trial, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and the plain error doctrine. We find no merit in the defendant's claim.

Initially, we note that our review of this claim is limited to the plain error doctrine. Practice Book § 4185. A claim of judicial bias in a probation revocation proceeding, which is akin to a civil proceeding, is not subject to *Golding* review. *State* v. *Burnhannan*, 34 Conn. App. 537, 541, 642 A.2d 59 (1994). "Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id.

Because the court, rather than a jury, sits as the trier of fact in a probation revocation hearing, "we presume, absent an affirmative showing to the contrary, that the . . . court can put aside whatever impressions [it] may have about the [defendant] and grant him a fair hearing." *Fair* v. *Warden*, 211 Conn. 398, 414, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 108 L. Ed. 2d 514 (1989). The defendant points to several statements by the court that he claims demonstrate that the court lacked impartiality. Only one of the statements was made by the court, however, prior to the conclusion of the presentation of evidence. When the defendant

---

[5] See *State* v. *Baxter*, 19 Conn. App. 304, 311, 563 A.2d 721 (1989).

refused to answer a question posed by the state, the court stated: "You want me to believe this story my friend, you better answer his questions." The court may take reasonable steps necessary for the orderly progress of the trial. *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982).

The remaining statements that the defendant claims demonstrate bias were made after the defense rested its case.[6] It cannot be said, therefore, that these statements demonstrate "a preconceived view of the credibility of a witness who had not yet testified before the trier." Id. Rather, they demonstrate that the court had listened to the evidence and found, albeit hastily, that the defendant was not particularly credible. The record in this case does not support the defendant's claim that the trial court appeared to lack impartiality such that the court should have disqualified itself.

## III

The defendant claims that the trial court improperly denied him the right personally to address the court during the revocation portion of the probation revocation hearing. The defendant argues that this right is expressly guaranteed by Practice Book § 919 (3), which provides that, at a sentencing hearing, "[t]he judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of

---

[6] The court posed a series of questions to the defendant, to which defense counsel did not object, pertaining to his employment and his cousin who had left a gun in his car then concluded with the following question: "Do you think I am believing you?" When the defendant responded that he did not know, the court stated: "Well let me assure you, sir, I don't want you to go out of this courtroom thinking I'm a fool. . . . Ninety-five percent of what you've said here today I don't believe, not for one instant." Finally, following defense counsel's closing argument, the court stated: "I appreciate, [counsel], you have to stand up here and say something on behalf of your client, and you did. I compliment you for that. You thought of something to say, because I wondered what you were going to say."

the sentence." After finding that the defendant had violated his probation, the trial court revoked the defendant's sentence of probation and ordered the defendant to serve the remainder of his original sentence. The defendant then asked to address the court, but the court refused to hear the defendant.[7] We find no merit in the defendant's claim.

We begin our analysis by examining the relevant sections of the rules of practice. Section 919 sets forth the procedures for conducting a sentencing hearing, including the mandate that a trial court shall allow the defendant a reasonable opportunity to address the court. Practice Book § 943 sets forth the procedures to be followed for the revocation of probation. After establishing how probation revocation proceedings may be initiated, § 943 provides: "All proceedings thereafter shall be in accordance with the provisions of Secs. 634 through 685. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. . . ."

Section 943 does not explicitly afford the defendant the right personally to address the court. Moreover, while specifically referring to Practice Book §§ 634 and 685, which deal with arraignment and release decision-making procedures, § 943 does not specifically require the procedures of § 919 to be followed. The defendant

---

[7] The following colloquy took place:

"The Court: The beneficial purposes of this probation to wit, his rehabilitation and the protection of society are no longer being served by this man being on probation. The sentence of probation is revoked and the defendant is ordered to serve as much of the original sentence as has not yet been served. Recess.

"The Defendant: Excuse, Your Honor, may I say something. Can I say something to you, sir?

"The Court: You can tell it to the people in the institution where you are being taken, sir.

"The Defendant: Can I—May I just say something to you sir?

"The Court: The court is in recess."

contends, nevertheless, that because the trial court "imposes" sentence in a probation revocation hearing, the defendant is entitled to the procedures outlined in § 919.

It is well established that "a probation revocation hearing has two distinct components. [*State* v. *Davis*, 29 Conn. App. 801, 805, 618 A.2d 557 (1993).] The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. . . . *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988) . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 229 Conn. 289–90.

The defendant argues: the second component of a probation revocation hearing is a sentencing procedure. Section 943 further provides: "If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law. . . ." Section 53a-32 (b) provides: "If [a] violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . ."

We have stated that: "A probation revocation hearing is not a stage of a criminal prosecution . . . ." (Citations omitted.) *State* v. *Carey*, 30 Conn. App. 346, 350, 620 A.2d 201 (1993), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994), citing *Gagnon* v. *Scarpelli*,

411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Section 919, governing the procedures for the sentencing of a defendant, clearly concerns a stage of the criminal prosecution and, therefore, does not apply to a probation revocation hearing.

Moreover, § 943 provides that a defendant may offer evidence and cross-examine witnesses at a probation revocation hearing. These rights are among those provided for in a sentencing hearing. See Practice Book § 919 (1). To hold that the procedures of § 919 must be followed in a probation revocation hearing would render the procedures outlined in § 943 superfluous. We will not read our rules of practice in such a way as to render their words superfluous. *State* v. *Smith*, supra, 207 Conn. 168.[8]

The defendant contends further that, even if our rules of practice do not mandate the defendant's right personally to address the court, the defendant must be afforded that right in order to meet the requirements of due process.[9] We recognize that "[t]he loss of liberty resulting from the revocation of probation is a serious deprivation requiring that the probationer be accorded

[8] The rules of practice are designed to regulate pleading, practice and procedure; see General Statutes § 51-14 (a); and are to be construed in accordance with our rules of statutory construction. *State* v. *Cook*, 183 Conn. 520, 521, 441 A.2d 41 (1981). In *State* v. *Baxter*, 19 Conn. App. 304, 563 A.2d 721 (1989), we examined whether a defendant was entitled to both a preliminary hearing and a subsequent formal hearing to determine whether probation should be revoked. Our analysis focused on Practice Book § 943 and General Statutes § 53a-32 (a), and made no mention of the applicability of Practice Book § 919. Id., 310.

[9] The defendant's brief states that because § 919 controls, "it is not necessary for this court to decide whether any form of the . . . right is guaranteed by either the federal or state constitution." Because the defendant goes on to discuss the federal due process right to address the court, however, we will address the claim under federal law. We will not, though address the defendant's claim under the Connecticut constitution because it has not been adequately briefed. See, e.g., *State* v. *Egan*, 37 Conn. App. 213, 218 n.4, 655 A.2d 802, cert. denied, 234 Conn. 905, 659 A.2d 1206 (1995).

due process of law . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *DeMasi*, 34 Conn. App. 46, 51, 640 A.2d 138, cert. denied, 230 Conn. 906, 644 A.2d 920 (1994). In *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the United States Supreme Court held that the minimum requirements of due process include "(a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]." See also *Gagnon* v. *Scarpelli*, supra, 411 U.S. 781–82 (holding that probationer is entitled to preliminary and final revocation hearings).

We have stated, however, that "[a] strict interpretation of the *Morrissey* standards runs contrary to the spirit of flexibility with which the Supreme Court promulgated the *Morrissey* and *Gagnon* due process requirements. . . . [D]ue process is flexible and calls for those procedural protections that the particular situation demands. . . . A revocation proceeding does not require all of the procedural components associated with an adversarial criminal proceeding." *State* v. *Baxter*, 19 Conn. App. 304, 312, 563 A.2d 721 (1989) (holding that there are instances in which preliminary hearing of *Gagnon* is superfluous).

In *United States* v. *Barnes*, 948 F.2d 325 (7th Cir. 1991), the Seventh Circuit Court of Appeals addressed the precise issue now before us. The court distinguished the situation in which a sentence had been imposed

but its execution suspended from the situation in which a defendant had been convicted but the imposition of sentence postponed. Id., 329. On the one hand, the court held that a defendant's right personally to address the court is not implicated at a hearing to revoke probation and to reinstate a previously imposed sentence. Id., citing *United States* v. *Coffey*, 871 F.2d 39 (6th Cir. 1989). On the other hand, if the sentencing decision had been postponed, then the right to address the court was also postponed. *United States* v. *Barnes*, supra, 329.

We find *Barnes* persuasive. In *Jackson* v. *Bailey*, 221 Conn. 498, 513–14, 605 A.2d 1350, cert. denied, 506 U.S. 895, 113 S. Ct. 216, 121 L. Ed. 2d 155 (1992), our Supreme Court noted that "where summary judgment for contempt is imposed during trial, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution. . . . However, [t]he United States Supreme Court . . . has often recognized that the requirements of due process cannot be ascertained through mechanistic application of a formula. *Groppie* v. *Leslie*, [404 U.S. 496, 500, 92 S. Ct. 582, 30 L. Ed. 2d 632 (1972)]. The essence of due process is fundamental fairness. . . . Due process is an element that, when absent, produces the reaction given to that which is shocking to the universal sense of justice. *United States* v. *Russell*, 411 U.S. 423, 432, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973)." (Citations omitted; internal quotation marks omitted.) The court held in *Jackson* that the defendant was not denied due process when he was not given the opportunity personally to address the court with regard to each of three findings of summary contempt despite such a requirement in Practice Book § 988. *Jackson* v. *Bailey*, supra, 515.

The trial court's refusal to allow the defendant to speak prior to the revocation of his parole and the lifting of the suspension of his original sentence does not

shock our sense of justice.[10] The defendant had the right to speak when he was sentenced in 1988. See Practice Book § 919 (3). " 'Revocation [of probation] is a continuing consequence of the original conviction from which probation was granted.' " *State* v. *Deptula*, 34 Conn. App. 1, 7, 639 A.2d 1049 (1994), quoting *State* v. *Smith*, supra, 207 Conn. 178. Moreover, the record reveals that the defendant testified at length and that his counsel was given the opportunity to speak with regard to the revocation and lifting of the suspended sentence. " '[O]ur precedents have sought to preserve the flexible informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial.' " *State* v. *Baxter*, supra, 19 Conn. App. 314, quoting *Black* v. *Romano*, 471 U.S. 606, 613, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985). We decline to burden the revocation of probation proceedings in this state by holding that the defendant had a right personally to address the court in this case as he requested.

We conclude that neither our rules of practice nor due process requires that the defendant be given the opportunity personally to address the court in a probation revocation hearing.

---

[10] In *State* v. *Carr*, 172 Conn. 458, 473, 374 A.2d 1107 (1977), our Supreme Court commented on the common law right to address personally the court as it existed prior to the adoption of § 919 (3). "At common law, the defendant in a felony case had a right called 'allocution' to be asked formally whether he had any reason to offer why judgment should not be awarded against him. . . . In many American jurisdictions, the practice of allocution has been codified in statutes or court rules, but except where this has been done it is apparent that the tendency is to regard the practice as a technical formality of little importance in modern criminal procedure, where other *procedural devices afford the accused ample opportunity to protect himself* at all stages of the proceeding." (Citations omitted; internal quotation marks omitted.) Id., 473–74. " 'In this state as to all crimes below that of murder the common law rule [of allocution] has never been observed in practice.' . . ." Id., 475, quoting *State* v. *Hoyt*, 47 Conn. 518, 545 (1880); see also 1 Connecticut Practice, W. Moller & W. Horton, Practice Book Annotated (3d Ed. 1989) § 919, comments.

## IV

The defendant next claims that the trial court deprived him of his right to counsel[11] by preventing his attorney from addressing the court with regard to the determination of whether the defendant's probationary status should be revoked. The defendant seeks review of this claim under State v. Golding, supra, 213 Conn. 239–40. We decline to review this claim.

The record reveals that after the court found that the defendant had violated his probation, the following colloquy took place.

"[Defense Counsel]: Because of the substantial exposure here, Your Honor, and because of the nature of this incident, I would like to take a deep breath and suggest to the court that a presentence report or some update of [the defendant's] status ought to be in order by the probation department. And I would ask Your Honor to consider that request.

"The Court: No. Have you got anything else to say?

"[Defense Counsel]: A lot.

"The Court: The beneficial purposes of his probation to wit, his rehabilitation and the protection of society are no longer being served by this man being on probation . . . . "

From this record, we cannot conclude that the trial court precluded counsel from addressing whether the defendant's probation should be revoked. There is no indication that the court prevented counsel from saying more than he did on the defendant's behalf. Counsel neither tried to offer more than his statement that he

---

[11] General Statutes § 53a-32 (a) provides in pertinent part: "At such hearing the defendant . . . shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender . . . ."

had a lot to say nor objected when the court went ahead and revoked the defendant's probation. We will not review a claim of prejudice based on conjecture and speculation. *State* v. *Dillon*, 34 Conn. App. 96, 102, 640 A.2d 630 (1994), rev'd on other grounds, 232 Conn. 537, 656 A.2d 657 (1995).

V

The defendant claims finally that the trial court improperly refused to order an updated presentence investigation report (PSI) before revoking the defendant's probation.[12] The defendant argues that a PSI was required under General Statutes § 54-91a (a)[13] and Practice Book § 910 (a)[14] and, in the alternative, the trial court abused its discretion in refusing to order a PSI. We disagree.

As we stated earlier, "[a] probation revocation hearing is not a stage of a criminal prosecution . . . but is a discrete statutory procedure to which many of the substantive and procedural rules of criminal law do not apply." (Citations omitted.) *State* v. *Carey*, supra, 30

---

[12] Defense counsel specifically made this request and it was denied. See part IV.

[13] General Statutes § 54-91a (a) provides: "No defendant convicted of a crime, other than a capital felony, the punishment for which may include imprisonment for more than one year, may be sentenced, or his case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if (1) the defendant is so convicted for the first time in this state or (2) his record, as shown by the prosecuting official, discloses a conviction obtained prior to five years from the finding of guilty in the present prosecution; but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony."

[14] Practice Book § 910 (a) provides in pertinent part: "If the defendant is convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation, or the supplementation of any existing presentence investigation report. The judicial authority may, in his or her discretion, order a presentence investigation for a defendant convicted of any crime or offense. . . ."

Conn. App. 350.[15] The defendant's reliance on the sentencing procedures of § 54-91a (a) and § 910 (a), therefore, is misplaced. A trial court revokes probation pursuant to General Statutes § 53a-32 (b), which provides: "If [a] violation is established, the court may continue or revoke the sentence of probation or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, *except upon consideration of the whole record and unless such violation is established by reliable and probative evidence.*" (Emphasis added.) See also Practice Book § 943. Because neither § 53a-32 (b) nor § 943 mandates that a PSI be provided prior to the revocation of probation or authorizes a trial court to exercise its discretion in ordering a PSI, we conclude that the court properly refused to order a PSI in this case.[16]

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LANDAU, J., dissenting. I disagree with the majority's reliance on *United States* v. *Barnes*, 948 F.2d 325 (7th Cir. 1991), in determining, in part III, that a defendant has no right of allocution in a probation revocation hearing.

The right of allocution affords a criminal defendant the opportunity to address the court on his own behalf prior to sentencing. See *United States* v. *Behrens*, 375 U.S. 162, 165, 84 S. Ct. 295, 11 L. Ed. 2d 224 (1963). "It is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *United States* v.

---

[15] See part III.

[16] We note that our Supreme Court recently decided that a "defendant's right to due process at sentencing does not include the right to a PSI." *State* v. *Patterson*, 236 Conn. 561, 572, 674 A.2d 416 (1996).

*De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994). "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green* v. *United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961), citing *Anonymous*, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B. 1689).

The broad language in *State* v. *Carr*, 172 Conn. 458, 474, 374 A.2d 1107 (1977), that the right of allocution in some jurisdictions is a "technical formality" and is of "little importance in modern criminal procedure" is misleading. In fact, the right of allocution "remains deeply embedded in our criminal jurisprudence." *United States* v. *De Alba Pagan*, supra, 33 F.3d 129; see Practice Book § 919 (3);[1] F .R. Crim. P. 32 (a) (1) (c);[2] *Boardman* v. *Estelle*, 957 F.2d 1523, 1529–30, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992) (holding that allocution is right guaranteed by due process clause of constitution). In *Green* v. *United States*, supra, 365 U.S. 304, for example, the Supreme Court stated that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."

The majority is correct that Practice Book § 943 does not expressly provide a defendant the right of allocution at a probation revocation hearing. The majority also relies on *United States* v. *Barnes*, supra, 948 F.2d 325. Barnes was convicted of conspiracy to possess with intent to distribute cocaine and distribution of cocaine.

---

[1] Practice Book § 919 provides in pertinent part: "(3) The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence."

[2] Rule 32 (a) (1) of the Federal Rules of Criminal Procedure provides in pertinent part that "[b]efore imposing sentence, the court shall also . . . address the defendant personally and [determine if the defendant] wishes to make a statement . . . and to present any information in mitigation [of the sentence]."

The District Court sentenced Barnes to three years imprisonment, to be followed by a five year term of special parole for distributing cocaine, but suspended imposition of sentencing for his conspiracy conviction, and placed Barnes on a five year period of probation. After Barnes violated the terms of his release, the District Court conducted a probation revocation hearing at which the court sentenced Barnes to five years imprisonment on the conspiracy count. The Seventh Circuit Court of Appeals vacated the sentence and remanded for resentencing because the District Court denied Barnes his right of allocution.

The Court of Appeals distinguished cases in which sentence has been imposed, but its execution suspended, from cases where the defendant is convicted but imposition of the sentence is postponed. The important distinction is that in the latter cases the scope of punishment is not preordained.

I write separately to highlight a different approach adopted by the First Circuit Court of Appeals, and offer the First Circuit's approach for consideration in lieu of that of *Barnes*. In *United States* v. *Buckley*, 847 F.2d 991 (1st Cir. 1988), cert. denied, 488 U.S. 1015, 109 S. Ct. 808, 102 L. Ed. 2d 798 (1989), the defendant, Buckley, pleaded guilty to one of two drug charges against him. The court accepted Buckley's plea and continued the case so that a presentence investigation report could be prepared. At the initial sentencing hearing, after giving Buckley an opportunity to address the court, the court imposed a provisional five year sentence and committed him for observation pursuant to 18 U.S.C. § 4205 (c) and (d). At the hearing on the final imposition of sentence, the court denied Buckley an opportunity to address the court. The court reasoned that Buckley had his right of allocution at the provisional sentencing hearing, and, thus, no such right existed at the final sentencing hearing.

The First Circuit Court of Appeals acknowledged that the District Court had denied Buckley his right of allocution. The Court of Appeals reasoned that the right of allocution arises when a defendant is *finally* sentenced. Thus, the denial of Buckley's right of allocution at the final sentencing could not be cured by what transpired at the prior provisional sentencing. The Court of Appeals remanded for resentencing in accordance with rule 32 (a) (1) (c) of the Federal Rules of Criminal Procedure, stating that "[t]he rule mandates precisely what it appears to mandate: a personal inquiry directed to the defendant himself." *United States* v. *Buckley*, supra, 847 F.2d 1002, citing *United States* v. *Dickson*, 712 F.2d 952, 956 (5th Cir. 1983).

Ultimately, both cases turn on the fact that the scope of punishment is not preordained at the time allocution is requested. See *United States* v. *Barnes*, supra, 948 F.2d 329; *United States* v. *Buckley*, supra, 847 F.2d 1002. In Connecticut, General Statutes § 53a-32 (b) provides in pertinent part: "If [a] violation [of probation or conditional discharge] is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . ." Section 53a-32 (b) bestows on the trial court broad discretion in deciding whether to revoke probation. See *State* v. *March*, 39 Conn. App. 267, 278, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995). As a result, the sentence imposed following a violation of probation or conditional discharge is not preordained.

Although *Buckley* is a federal provisional sentencing case, I would adopt the First Circuit's analysis. Even though the defendant was afforded his right of allocution when he was provisionally sentenced, that right should be extended at his final sentencing. The burden

on the trial court, in allowing a defendant a right of allocution at a probation revocation hearing, is out-weighed by concerns of fundamental fairness.