## STATE OF CONNECTICUT *v.* GREG STRICKLAND
## (SC 15550)

Callahan, C. J., and Berdon, Norcott, Katz and Palmer, Js.

Argued September 25—officially released December 2, 1997

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael Pepper* and *Jack W. Fischer*, assistant state's attorneys, for the appellee (state).

*Opinion*

BERDON, J. The sole issue that we address in this certified appeal is whether the Connecticut rules of practice provide a right of allocution to a defendant during the disposition phase of a probation revocation proceeding.[1] Following the initial, liability phase of the probation revocation hearing, the trial court concluded that the defendant, Greg Strickland, had violated the conditions of his probation. Thereafter, the court conducted the disposition phase of the hearing to determine how much, if any, of the remaining six and one-half years of his sentence the defendant should be required to serve as a result of the violation. The defendant was not provided with an opportunity personally to address

---

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that neither the Practice Book nor the due process clause of the federal constitution provides a right of allocution during the revocation portion of a probation revocation proceeding?" *State* v. *Strickland*, 239 Conn. 932, 683 A.2d 400 (1996). Because we conclude that the rules of practice provide a right of allocution, we do not review that part of the certified issue questioning whether the due process clause of the federal constitution requires that the defendant be afforded this right.

the court at the hearing, although he twice requested an opportunity to do so. The Appellate Court decided that an opportunity to address the court during the disposition phase of a probation revocation proceeding is not a right to which defendants are entitled, under either the federal due process clause or the Connecticut rules of practice. *State* v. *Strickland,* 42 Conn. App. 768, 783, 682 A.2d 521 (1996). We reverse the judgment of the Appellate Court.

The record reveals the following facts and procedural history. On November 17, 1988, the defendant pleaded guilty to kidnapping in the second degree in violation of General Statutes § 53a-94, assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). The trial court sentenced the defendant to a term of imprisonment of eleven years, execution suspended after four and one-half years, and probation of three years. On November 1, 1992, after serving approximately four years of his sentence, the defendant was released subject to certain conditions of probation.

On March 10, 1994, the defendant was involved in an incident at the home of a friend that resulted in criminal charges against him.[2] Thereafter, the defendant's probation officer prepared an arrest warrant based upon the defendant's failure to report to her as directed on two occasions and the alleged criminal violations pertaining to the March 10, 1994 incident. By an amended information dated January 25, 1995, the defendant was charged with a violation of probation pursuant to General Statutes § 53a-32.[3] On February 6, 1995, at the conclusion of the liability portion of the probation revocation hearing,

[2] The details of that incident are reported fully in the Appellate Court opinion. See *State* v. *Strickland,* supra, 42 Conn. App. 770–71.

[3] See footnote 10 of this opinion.

the trial court determined that the state had proven by a fair preponderance of the evidence that the defendant had violated the conditions of his probation by failing to report as directed to his probation officer on the dates alleged, carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a), obliterating the identification number on a pistol or revolver in violation of General Statutes § 29-36, and criminally possessing a firearm in violation of General Statutes § 53a-217.

Following the trial court's finding of liability, the hearing entered the disposition phase. The transcript reveals that the following exchange then occurred:

"[Jerome Rosenblum, Assistant Public Defender]: Well, this—because of the substantial exposure here, Your Honor, and because of the nature of this incident, I would like to take a deep breath and suggest to the court that a presentence report or some update of his status ought to be in order by the probation department. And I would ask Your Honor to consider that request.

"The Court: No. Have you got anything else to say?

"Mr. Rosenblum: A lot.

"The Court: The beneficial purposes of his probation to wit, his rehabilitation and the protection of society are no longer being served by this man being on probation. The sentence of probation is revoked and the defendant is ordered to serve as much of the original sentence as has not yet been served. Recess.

"[The Defendant]: Excuse, Your Honor, may I say something? Can I say something to you, sir?

"The Court: You can tell it to the people in the institution where you are being taken, sir.

"[The Defendant]: Can I—may I just say something to you sir?

"The Court: The court is in recess."

The proceedings were then adjourned.

On appeal before the Appellate Court, the defendant claimed that he was improperly deprived of the opportunity to address the court during the disposition phase of the revocation proceeding. The Appellate Court affirmed the trial court's judgment, finding that, in Connecticut, no right of allocution exists at a probation revocation hearing. *State* v. *Strickland*, supra, 42 Conn. App. 783. This appeal followed.

I

Before addressing the specific application of the rules of practice to probation revocation proceedings, we review the historical underpinnings of the right of allocution. Allocution, or the right of a defendant to make a statement to the court on his own behalf and present information in mitigation of sentence, has its origins in the ancient common-law practice of inquiring of every defendant if he had anything to say before sentence was imposed. The practice is so old that its precise origins are unknown, but, as early as 1689, it had become apparent that the practice was more than a mere formality; in fact, the right of allocution was considered important enough at that time to require reversal when the court failed to make the inquiry of a defendant. See *Anonymous*, 3 Mod. 265, 87 Eng. Rep. 175 (1689). Historically, the practice marked a critical juncture in criminal proceedings, as it afforded defendants the opportunity to inform the court as to the applicability of any of numerous recognized exemptions from the otherwise severe punishments imposed by the common law of the period. When asked whether sentence should not be pronounced, a defendant might then "plead his benefit of clergy, that he had obtained a pardon, identity of person, pregnancy [insanity] or . . . any ground in arrest of judgment . . . ." (Internal

quotation marks omitted.) P. Barrett, "Allocution," 9 Mo. L. Rev. 115, 121 (1944).

Although the original common-law circumstances necessitating the practice gradually ceased to exist, and many jurisdictions had occasion to question whether it had become obsolete,[4] the practice continued in numerous jurisdictions because it was recognized that allocution continued to serve an important function. The idea of permitting defendants an opportunity to request mitigated punishment was present in Connecticut's early jurisprudence. Chief Judge Zephaniah Swift described the practice as follows: "The judge then demands of the prisoner if he has any thing to say . . . . This is rather [a] matter of form, as all the legal means of defence have been previously exhausted: but the court will permit the prisoner to make any respectful remarks respecting his case *in mitigation of his conduct* . . . ." (Emphasis added.) 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 417. An early New Mexico case explained another purpose that, over the centuries, allocution had come to serve: "The object of the address is to give the defendant the opportunity to personally lay before the court statements which, by the strict rules of law, could not have been admitted when urged by his counsel in the due course of legal procedure; but which, when thus informally offered from man to man, may be used to extenuate guilt and to mitigate punishment." (Internal quotation marks omitted.) *Territory* v. *Webb*, 2 N.M. 147, 158 (1881).

Modern day justifications for preserving the practice focus on tailoring punishment to individual circumstances, providing an avenue through which a defendant may ask for mercy based on factors that might not

---

[4] Connecticut was one jurisdiction that questioned the continuing validity of the practice, although it would later provide for allocution by procedural rule. See *State* v. *Hoyt*, 47 Conn. 518, 545–46.

otherwise be brought to the court's attention, and promoting safety, certainty and equity in sentencing and the judicial process overall. "[T]he opportunity to plead for mercy is another provision in a procedural body of law designed to enable our system of justice to mete out punishment in the most equitable fashion possible, to help ensure that sentencing is particularized and reflects individual circumstances. . . . Aside from its practical role in sentencing, the right has value in terms of maximizing the perceived equity of the process." (Citations omitted; internal quotation marks omitted.) *United States* v. *Barnes*, 948 F.2d 325, 328 (7th Cir. 1991). "The right of allocution affords a criminal defendant the opportunity to make a final plea to the judge on his own behalf prior to sentencing. . . . Ancient in law, allocution is both a rite and a right. It is designed to temper punishment with mercy in appropriate cases . . . ." (Citation omitted.) *United States* v. *De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994). "[A]llocution provides a defendant the opportunity to meaningfully participate in the sentencing process and to show that he or she is a complex individual and not merely an object to be acted upon." (Internal quotation marks omitted.) *State* v. *Chow*, 77 Haw. 241, 250, 883 P.2d 663 (1994).

Thus, although at one time allocution as a critical stage in criminal proceedings was perceived to be on the wane in some jurisdictions, it has not disappeared from our jurisprudence, but instead has been affirmatively adopted by statute or procedural rule in several jurisdictions during the modern era.[5] The United States Supreme Court has stated: "We are not unmindful of

---

[5] By the twentieth century at least twenty-one states had statutes specifically providing for a right of allocution, at least twelve states and the federal jurisdiction recognized a common-law right of allocution, and several others provided for allocution by custom. The American Law Institute's proposed Code of Criminal Procedure also provides for the right of allocution. P. Barrett, supra, 9 Mo. L. Rev. 125–26.

the relevant major changes that have evolved in criminal procedure since the seventeenth century . . . [b]ut we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green* v. *United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961) (construing rule 32 [a] of Federal Rules of Criminal Procedure, now rule 32 [c] [3] [C], providing right of allocution in federal cases).

## II

In this case, the state does not dispute that in Connecticut a right of allocution is provided for by Practice Book § 919 (3).[6] In its first claim, however, the state argues, that probation revocation proceedings are governed by Practice Book § 943,[7] not

[6] Practice Book § 919 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows . . .

"(3) The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence. . . ."

[7] Practice Book § 943 provides in relevant part: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation or his or her conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a

§ 919.[8] Specifically, the state contends that because § 943 does not expressly incorporate § 919 (3) by reference, § 919 (3) was not intended to extend to revocation proceedings. Further, the state contends, and a majority of the Appellate Court panel found, that § 919 (3) cannot be construed to apply to revocation proceedings without rendering § 943 in large part superfluous. *State* v. *Strickland*, supra, 42 Conn. App. 780. The defendant argues that the two provisions can be read together to apply to revocation proceedings without rendering any portions of either to be surplusage. We agree with the defendant.

Initially, we note that our Practice Book provisions are interpreted in accordance with the same principles that guide interpretation of our General Statutes. Therefore, our rules of practice should be construed harmoniously and not in a way that would render one provision

statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 through 685. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law. . . ."

[8] As a threshold matter, the state claims that because the defendant failed to request permission to address the trial court before the court announced its decision to revoke his probation, but only requested such permission afterward, the defendant's claim was not properly preserved for review. The Appellate Court refused to consider the issue, although it was raised by the state in its appeal to that court.

Although counsel for the defendant was ostensibly given an opportunity to address the trial court, he was only able to respond to the trial court by uttering two words before being interrupted by the court's determination that the probation was to be revoked and the remainder of the original sentence imposed. Immediately after the court's announcement, the defendant twice attempted to address the court. In response to the first attempt, he was told by the trial court that he could "tell it to the people in the institution where [he was] being taken . . . ." In response to the second attempt, the trial judge adjourned court and left the bench. Under these circumstances, we believe that the defendant did everything in his power to make clear that he sought an opportunity to address the court. The claim, therefore, was properly preserved for review.

superfluous as a result of the existence of another. *State v. Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995); *State v. Ellis*, 197 Conn. 436, 472–73, 497 A.2d 974 (1985), on appeal after remand sub nom. *State v. Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990).

We also note, at the outset, that this court has previously established that a probation revocation proceeding consists of two distinct stages. *State v. Davis*, 229 Conn. 285, 289–90, 641 A.2d 370 (1994). The first phase is conducted to determine liability, and requires the trial court to hold "an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation." Id., 289. The second, or disposition, phase occurs if a violation of probation is established in the first phase. Id., 290; see Practice Book § 943. During the second phase, the court makes its disposition as authorized by § 53a-32.

The state's first claim, that § 919 (3) is inapplicable to revocation of probation proceedings because. it is not expressly incorporated into § 943, requires a careful examination of those provisions. Section 919 is a detailed provision that specifies the procedures to be followed at sentencing hearings, and subsection (3) specifically provides that the voice of the defendant himself is to be heard at the hearing should he elect to allocute. Section 943 addresses the revocation of probation. In addition to specifying the conditions under which and by what process a revocation proceeding may be initiated, § 943 requires that the liability phase of revocation proceedings be conducted in accordance with Practice Book §§ 634 through 685, covering, inter alia, arraignment.[9] Section 943 further provides that the prosecuting authority and the defendant be afforded the opportunity to present evidence and cross-examine witnesses.

---

[9] Practice Book §§ 634 through 685 also provide in part for pretrial release, specifically, §§ 652 through 685.

Within § 943, the only sentence that pertains to the disposition phase of the revocation proceeding is the sentence that provides that "[i]f the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law." The earlier provisions of § 943, on the other hand, are directed toward the liability phase of the proceeding. Once this distinction is identified, it becomes apparent that reading § 919 (3) to apply to the disposition phase of a probation revocation proceeding does not create a conflict with § 943. Section 943 does not purport to govern probation revocation proceedings exclusively, and in fact does not address the procedure to be followed during the disposition phase of the hearing at all. The fact that § 943 specifies procedures to be followed during the liability phase but not the disposition phase of revocation proceedings need not compel the conclusion that there are no procedural requirements whatsoever applicable to the latter phase. In particular, the absence of specific requirements under § 943 should not be dispositive where the purposes underlying § 919 (3) would best be served by holding that section applicable to the proceeding in which the original sentence is reopened and modified. Therefore, this claim alone does not preclude the application of § 919 (3) to probation revocation proceedings.

The state's second claim is that the plain language of § 919 (3) precludes its application to probation revocation proceedings, because § 919 (3) provides that it applies to sentencing, and a revocation of probation is not a sentencing. The defendant argues that because the disposition phase of a probation revocation proceeding is, in substance, largely indistinguishable from the sentencing that follows a criminal prosecution, the right of allocution should also apply to revocation proceedings. We agree with the defendant.

Although § 919 (3) refers specifically to sentencing, the disposition phase of the probation revocation proceedings is not so dissimilar to original sentencing as to necessarily exclude it from § 919 (3). We have characterized the disposition phase as "a final modification of the sentence which is the judgment of the court in the proceedings against the defendant"; *State* v. *Roberson*, 165 Conn. 73, 82, 327 A.2d 556 (1973); and, in determining subject matter jurisdiction, we have stated that "[r]evocation is a continuing consequence of the original conviction from which probation was granted . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 306, 610 A.2d 1147 (1992), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994).

Our conclusion is reinforced by § 53a-32 (b),[10] which authorizes specific dispositions that trial courts may

[10] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation . . . . [T]he court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

make once a violation of probation has been established. First, § 53a-32 (b) employs sentencing language. That subsection provides that courts may continue the sentence of probation, modify or enlarge the conditions of probation, extend the period of probation, or revoke probation and require the defendant to serve the remainder of his original sentence or "impose any lesser sentence." Second, § 53a-32 (b) affords trial courts considerable discretion in making such dispositions. Although the length of time that a defendant can be required to serve in confinement is capped by the length of the original sentence remaining, the discretion afforded to the trial court is in other respects identical to the discretion provided to the court at the time of the original sentencing.

General Statutes § 51-195 lends further support to the argument that, in Connecticut, revocation of probation proceedings embody a form of sentencing. Under § 51-195, a defendant is entitled to sentence review if the revocation proceeding results in the defendant being required, as here, to serve more than three years in confinement.[11] Sentence review is provided under exactly the same circumstances as those under which a defendant is entitled to sentence review of an original sentence. Section 51-195, therefore, provides a strong indication that courts, in revoking probation, are in effect actually sentencing probationers. Furthermore, the transcript of the disposition phase of a probation

[11] General Statutes § 51-195 provides in relevant part: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed . . . file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. . . ."

revocation proceeding, like the transcript of an original sentencing proceeding, is made available to the sentence review panel in order to enable that panel to review all of the surrounding circumstances of the sentencing.[12]

Other jurisdictions that have considered whether probation revocation proceedings involve the imposition of sentence, and, therefore, implicate the right of allocution, have looked to whether the presiding judicial authority is vested with discretion in determining the sanction for a violation of probation. In *United States* v. *Barnes*, supra, 948 F.2d 332, the Court of Appeals for the Seventh Circuit interpreted rule 32 (a) (1) (C) of the Federal Rules of Criminal Procedure, now rule 32 (c) (3) (C), the federal rule providing a right of allocution, to apply "at probation revocation hearings in which sentencing is imposed, after an earlier deferral of sentencing, or in cases in which resentencing follows a vacated sentence." The court's reasoning distinguished between cases in which a sentence had been imposed but its execution had been deferred and cases in which imposition of a sentence was postponed. In the former category of cases, the court found that allocution would not be required. Because the sentence to be imposed was predetermined, the court reasoned, an opportunity to plead for mercy would be meaningless. The court held, however, that when the imposition of sentence is postponed, allocution must be granted at the probation revocation proceeding. In that situation, the court recognized that the scope of the punishment is not preordained and the right to allocution remains significant. Id., 329.

In *United States* v. *Carper*, 24 F.3d 1157, 1160–61 (9th Cir. 1994), the court applied the reasoning in *Barnes* to sentencing that followed the revocation of supervised

---

[12] See Practice Book §§ 939 through 941.

release. The court identified three categories of revocation proceedings: "(1) proceedings that reinstate a previously imposed sentence whose execution has been suspended; (2) proceedings that impose a new sentence for a conviction for which sentencing was previously deferred; and (3) proceedings that impose a new sentence based on conduct that occurred during supervised release." Id., 1160. The court emphasized that whether allocution was required depended upon the category of proceeding at issue. The proceeding in *Carper* fell into the third category. The court decided that because the scope of the punishment for conduct occurring during supervised release is not preordained, allocution must be afforded. Id., 1161–62.

In this case, like in *Barnes* and *Carper*, the punishment to be imposed for a violation of probation was not preordained. Under § 53a-32, the court was vested with broad discretion during the disposition phase of the revocation hearing. *State* v. *Davis*, supra, 229 Conn. 290. The court was not obligated to require the defendant to serve any or all of his remaining sentence; indeed, it had the discretion to continue probation, and modify or enlarge the conditions if it so chose. In these circumstances, allocution was not rendered a meaningless formality by a predetermined outcome to the proceeding. Instead, the circumstances involved an exercise of broad discretion that the defendant could have attempted to influence if allocution had been allowed. Although the defendant had an opportunity to make a statement on his own behalf at his original sentencing, that opportunity did not allow him meaningfully to attempt to influence the exercise of another judge's discretion with regard to the consequences to be imposed for the subsequent violation of probation. In other words, timing is an important element of the right of allocution. See *United States* v. *Behrens*, 375 U.S. 162, 165, 84 S. Ct. 295, 11 L. Ed. 2d 224 (1963)

(right of allocution would be largely lost if afforded only at time of preliminary commitment and not at final sentencing, which is sentencing that really matters); *United States* v. *Buckley,* 847 F.2d 991, 1002 (1st Cir. 1988) (right of allocution must be extended when defendant is finally sentenced, even if allocution previously afforded at provisional sentencing).

For all of the above reasons, and in light of the fundamental purposes served by allocution, namely, maintaining fair standards of procedure, individualized and equitable sentencing, and the perception of fairness in the judicial system overall, we conclude that § 919 (3) was intended to apply to the disposition phase of probation revocation proceedings. Furthermore, it is worth noting that the application of § 919 (3) to revocation proceedings will not impose a significant burden on our trial courts. "The right of allocution is minimally invasive of the sentencing proceeding; the requirement of providing the defendant a few moments of court time is slight. . . . In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice." *United States* v. *Barnes,* supra, 948 F.2d 331.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to a trial court other than the court that revoked the defendant's probation with direction to conduct another disposition phase of the probation revocation proceeding during which the defendant is to be allowed the right of allocution.

In this opinion the other justices concurred.