ANGEL LUIS ORTIZ *v.* COMMISSIONER OF
CORRECTION
(AC 25331)

Bishop, DiPentima and Gruendel, Js.

Argued May 25—officially released September 20, 2005

*George G. Kouros*, special public defender, with whom were *Michael O. Sheehan*, special public defender, and, on the brief, *Richard A. Reeve*, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Herbert E. Carlson, Jr.*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Angel Luis Ortiz, appeals from the trial court's judgment denying his amended petition for a writ of habeas corpus in which he claimed that he had been denied the effective assistance of counsel. On appeal, the petitioner claims that the court improperly rejected his claim that his trial attorney had been ineffective for failing to make a showing that the mental condition of a state's witness had affected her testimonial capacity sufficient to warrant an in camera review of the witness' medical records. We affirm the judgment of the habeas court.

The following factual and procedural background is relevant to our consideration of the petitioner's claim. In the late hours of July 27, 1994, and into the early hours of July 28, 1994, the petitioner and Julio Diaz-

Marrero carried out a plan to kidnap, rob and kill Hector Alvarado and his wife, Migdalia Bermudez. The victims were abducted and robbed in Hartford, and then taken to Rocky Hill where they were executed.

The petitioner was convicted, after a jury trial, of one count of capital felony in violation of General Statutes §§ 53a-54b (8) and 53a-8; two counts of capital felony in violation of §§ 53a-54b (5) and 53a-8; two counts of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8; two counts of felony murder in violation of General Statutes § 53a-54c; one count of conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a); two counts of kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (A), (B) and (C) and 53a-8; one count of robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8; one count of conspiracy to commit kidnapping in the first degree in violation of §§ 53a-92 (a) (2) (A), (B) and (C) and 53a-48 (a); and one count of conspiracy to commit robbery in the first degree in violation of §§ 53a-134 (a) (4) and 53a-48 (a). The court sentenced Ortiz to a total effective term of life imprisonment without the possibility of release. With one minor exception, our Supreme Court affirmed the judgment of conviction.[1]

At his criminal trial, the petitioner's lead counsel was Michael Graham, who died after the criminal trial and before the habeas proceeding. Maria Cruz Rodriguez, the mother of Hector Alvarado and the stepmother of the petitioner's common-law wife, Carmen Alvarado, first testified outside the presence of the jury during the hearing on the petitioner's motion to suppress evidence relating to Rodriguez' identification of a photograph of

_____

[1] The court ordered that the conviction of three counts of conspiracy be combined and that the sentence for two of those counts be vacated. *State* v. *Ortiz*, 252 Conn. 533, 579, 747 A.2d 487 (2000).

Diaz-Marrero. Rodriguez, who never attended school, was illiterate and spoke no English, testified that she was under treatment for "nerves" at Hartford Hospital but denied that her "nerves" caused her to be confused about her testimony.

Rodriguez then testified in the presence of the jury regarding her knowledge of facts relevant to the crimes. She stated that the petitioner and Diaz-Marrero had come by her apartment twice on the evening of July 27, 1994, once at 8:30 p.m. and again at 9:30 p.m., and that they were asking for Hector Alvarado. She testified that they were accompanied by a third person, who remained in the car. In placing the petitioner with Diaz-Marrero on the night of the killings, looking for Hector Alvarado, Rodriguez corroborated the testimony of the state's chief witness and contradicted the petitioner's October, 1994 statement to the police that he did not know Diaz-Marrero other than perhaps having seen him on the street. During her testimony, Rodriguez acknowledged that she was nervous. At the conclusion of this testimony, Graham informed the court that he had subpoenaed Rodriguez' hospital records but that they had not yet arrived. Rodriguez informed the court that she went to a Hartford Hospital clinic every three months but that she was "just fine" because the clinic gives her "pills for [her] nerves." At that juncture, Rodriguez was unwilling to consent to an in camera review of her hospital records.

Later in the trial, the state informed the court that Rodriguez would consent to an in camera review of her hospital records on a showing that there was a reasonable basis to believe that she suffered from a condition that impaired her testimonial capacity. Subsequently, an employee of Hartford Hospital appeared in court, in response to Graham's subpoena, with hospital records pertaining to Rodriguez. Graham requested that the court conduct an in camera review of the records

on the basis of Rodriguez' testimony that she had undergone treatment for her "nerves," and the fact that her testimony was "scattered as far as temporal and spatial relationships." Graham also represented that he had spoken with the petitioner's common-law wife, Carmen Alvarado, who indicated that "[Rodriguez] had been undergoing mental health treatment for many years and it preceded and predated the deaths of both of her sons." The court stated that it would consider such testimony if offered. It was not. The state objected to any review of the records, arguing that the required threshold had not been satisfied. The court sustained the objection, concluding that "[t]here is not a remotely close showing of anything preliminary in this regard."

On direct appeal, the petitioner claimed, inter alia, that the court improperly denied his motion for an in camera inspection of Rodriguez' psychiatric records. *State* v. *Ortiz*, 252 Conn. 533, 556–57, 747 A.2d 487 (2000). Our Supreme Court held that the required preliminary showing had not been made, and, therefore, it upheld the trial court's ruling. Id., 558.

Following his unsuccessful appeal, the petitioner filed a petition for a writ of habeas corpus. The petitioner claimed, inter alia, that he was denied the effective assistance of counsel because Graham failed to offer Carmen Alvarado's testimony regarding Rodriguez' mental condition, which, he claimed, would have established a proper foundation for the court to review Rodriguez' psychiatric records. By memorandum of decision dated February 27, 2004, the court found that Graham had not been deficient in his representation of the petitioner and that even if Graham's representation had been deficient, the petitioner was not prejudiced.[2]

[2] The petitioner raised additional claims alleging ineffective assistance of counsel, which were addressed by the court. The court's determination of those claims has not been challenged on appeal.

Certification to appeal was granted, and this appeal followed.

On appeal, the petitioner claims that the habeas court improperly held that Graham's performance was not deficient in failing to offer Carmen Alvarado's testimony because that testimony would have been insufficient to establish a preliminary showing for an in camera review of Rodriguez' psychiatric records.[3] We disagree.

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of the conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Spivey* v. *Commissioner of Correction*, 80 Conn. App. 58, 60, 832 A.2d 1204 (2003).

It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that there is a "reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testi-

[3] The court also found that Carmen Alvarado's testimony was not credible. The petitioner challenges that finding. Because we agree with the court's conclusion that Carmen Alvarado's testimony would not have been sufficient to establish the preliminary showing required to inspect Rodriguez' medical records, we need not reach that issue.

mony should be stricken." *State* v. *Esposito*, 192 Conn. 166, 179, 471 A.2d 949 (1984). "Where, as here, the witness' records are sought for the purpose of obtaining evidence of a mental condition bearing on the witness' testimonial capacity, we require the defendant, who is afforded an opportunity to voir dire persons with knowledge of the contents of the records sought, to adduce a factual basis from which the trial court may conclude that there is a reasonable ground to believe that the records will reveal that at any pertinent time [the witness' mental problem] affected his testimonial capacity to a sufficient degree to warrant further inquiry." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 523, 673 A.2d 1117 (1996). In evaluating the sufficiency of the petitioner's offer, what is pertinent is the existence of a mental issue that may have affected Rodriguez' testimonial capacity, not her general character, her intelligence or the fact that she was at times inconsistent in her testimony. See id., 526–27. A person who suffers from mood swings, anxiety and anger is not, by those facts alone, unable to depict events accurately. *State* v. *Maye*, 70 Conn. App. 828, 835, 799 A.2d 1136 (2002). Indeed, as this court has noted, "a history of mental illness does not automatically impugn a witness' ability to testify truthfully and to relay events accurately. Moreover, the existence of a psychiatric disorder does not automatically [make] a witness fair game for disclosure of psychiatric records to a criminal defendant." (Internal quotation marks omitted.) Id.

With those principles in mind, we now turn to the petitioner's claim. At the habeas trial, Carmen Alvarado testified that she told Graham that Rodriguez "was crazy" and that she was receiving medical treatment at Hartford Hospital. According to Carmen Alvarado, Graham never asked her to elaborate on Rodriguez' mental condition, which she described in her habeas trial testimony as follows: "Sometimes she was happy;

sometimes she was sad and she would cry for anything. Sometimes she would be hysterical. Sometimes she would accuse you of doing things that you never did, but it was all part of her nervous condition." When asked to elaborate, Carmen Alvarado testified that Rodriguez became sad, cried and remembered things from the past "because her son was dead . . . his daughter was alone in Puerto Rico [and] because her husband had been killed and she would just . . . be sad like that." Regarding Rodriguez' hysterics, Carmen Alvarado testified that sometimes Rodriguez would be moody, irritable and "fighting with everybody." Carmen Alvarado testified that "[s]ometimes [Rodriguez] was fine. Sometimes she was not. Sometimes she was crying."

At the habeas trial, the petitioner offered evidence that Rodriguez had received treatment and medication for a nervous condition. There is nothing in the record, either from the testimony of Rodriguez at the criminal trial or from Carmen Alvarado at the habeas trial that suggests that Rodriguez' testimonial capacity was impaired by a condition that would have been revealed in her medical records. Because evidence that Rodriguez was uneducated and illiterate, did not speak English and, at times, was emotionally labile would not have provided a sufficient basis for an in camera inspection of her psychiatric records, the court correctly determined that Graham's failure to offer Carmen Alvarado's testimomy at trial was within the parameters of effective representation. Accordingly, we conclude that the petitioner failed to prove that he received deficient representation during the underlying criminal proceedings.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Because we conclude that the petitioner failed to prove that his counsel was deficient, we do not address the issue of prejudice.