STATE OF CONNECTICUT *v.* SAMUEL BRUNETTE
(AC 25315)

Dranginis, Gruendel and Freedman, Js

Argued September 19—officially released November 29, 2005

*David V. DeRosa,* special public defender, for the appellant (defendant).

*Melissa Streeto Brechlin,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Eva B. Lenczewski,* senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Samuel Brunette, appeals from the judgment of the trial court finding him in violation of the conditions of his probation, revoking his probation and sentencing him to three years incarceration, all pursuant to General Statutes § 53a-32.[1] On appeal, the defendant claims that the court improperly (1) found him criminally culpable for threatening in the second degree and breach of the peace in the second degree in determining that he violated a condition of his probation, (2) considered his discharge from sexual offender treatment in determining that his probation should be revoked and (3) neglected to notify

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

him of the alleged violations of probation in violation of his due process rights. We disagree and, accordingly, affirm the judgment of the trial court.

On November 20, 1998, the defendant pleaded guilty to sexual assault in the second degree in violation of General Statutes § 53a-71 (a).[2] In accordance with the plea, the court sentenced the defendant to a total term of six years imprisonment, execution suspended after fifteen months, and ten years probation. A special condition of the defendant's probation was that he attend sex offender evaluation and treatment.

The defendant began his probation on February 18, 2000, residing with his parents and siblings. The defendant's wife and their three children lived in a separate residence. On the morning of September 4, 2003, the defendant appeared at his wife's residence in connection with the repossession of her television.

The wife previously had entered into a written lease agreement with Rent-A-Center, Inc., for the television, which provided that if she failed to make timely payments, Rent-A-Center, Inc., retained the right to repossess it.[3] When she defaulted under the lease agreement, Rent-A-Center, Inc., sent her letters demanding that she

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] In relevant part, the agreement stated: "If you fail to make a rental renewal payment by the due date, this Agreement automatically terminates and we are entitled to the immediate return of our property. . . . If you return the property to us [upon default], your right to reinstate this Agreement will be extended . . . . Upon reinstatement, we will provide you with the same property, or with substitute property of comparable condition and quality. . . . [I]f you breach this lease, we have the right to possession of the property. If this happens, you agree to return the property or make arrangements for us to take possession of it. If you fail or refuse comply with this requirement, you agree to pay our costs incurred in taking possession of it."

return the television. The defendant called Rent-A-Center, Inc., and spoke with the manager in order to come to an agreement about the television. According to the defendant's wife, the defendant and the manager agreed that she would return the television and that Rent-A-Center, Inc., would provide a letter crediting her with the amount of money that she already had paid toward it.[4] As part of the agreement, Rent-A-Center, Inc., would repossess the television at 10 a.m. on September 4, 2003.

On the morning of September 4, 2003, two Rent-A-Center, Inc., employees, Julio Rivera and Anthony DoCarmo, were late in arriving at the wife's residence. In the interim, she had fallen asleep with two of her children while putting them down for their naps. The court credited Rivera's testimony that he and DoCarmo had knocked on the front door, received no answer and then proceeded to the back door where they were met by the defendant. The defendant allowed Rivera and DoCarmo to go into the living room to repossess the television. The wife claimed that the defendant was not in her apartment on the morning of September 4, 2004. Rather, she asked a neighbor to call her husband after awakening from her nap, coming downstairs and seeing Rivera and DoCarmo in her living room.

After discovering Rivera and DoCarmo, the defendant's wife demanded to know if the men had brought the letter of credit. When Rivera responded that they had not, she told them they would have to get such a letter before she would hand over the television. Rivera and DoCarmo explained to her that she did not need a letter of credit because the credit she demanded already was part of the company policy of Rent-A-Center, Inc.[5]

---

[4] The defendant's wife admitted that because she did not make the agreement with the manager of Rent-A-Center, Inc., her understanding of that agreement was based on what the defendant had told her subsequent to his conversation with the manager.

[5] Under the standard policy of Rent-A-Center, Inc., a lessee in default is automatically credited for all money that he has paid on a returned item.

Rivera and DoCarmo continued to unplug cables from the television at which point she asked the men to leave her apartment.

The defendant appeared in the living room with a pit bull dog on a leash and goaded the dog in a threatening manner toward the two men. Rivera told the defendant that he would call the police if the defendant continued that course of conduct. The defendant responded, "Go ahead, call the police," whereupon Rivera dialed 911. While Rivera was on the telephone, the defendant grabbed him from behind and pushed him out of the front door. Soon thereafter, Steven Flaherty, an officer with the Waterbury police department, arrived at the apartment and arrested the defendant on two counts of assault and one count each of breach of the peace and threatening. Flaherty also notified the defendant's probation officer, George N. Tzepos, who then applied for a warrant for the defendant's arrest on a charge of violation of probation.

At the first phase of the defendant's probation revocation hearing, the court found by a preponderance of the evidence that the defendant had committed threatening in the second degree and breach of the peace in the second degree.[6] The court found that the testimony of Rivera was credible, that the defendant had used the dog in a threatening manner and that the defendant had no right to defend his wife because neither she nor the children were being threatened. The court thus determined that the defendant had violated the law without justification and therefore had violated his probation. At the second phase of the defendant's probation revo-

---

If the lessee then begins making payments on the item, it is treated as if there had been no interruption in the lease.

[6] The court found that the defendant had not committed assault in the third degree in violation of General Statutes § 53a-61 because there had been no evidence that the defendant's conduct had caused physical injury to Rivera.

cation hearing, the court determined that he had not complied with sex offender treatment, and, thus, the beneficial purposes of his probation were no longer being served. Accordingly, the court revoked the defendant's probation and sentenced him to three years incarceration.

As a preliminary issue, we note that the record before us is inadequate and that we therefore may decline to review the claims raised on appeal.[7] See Practice Book § 64-1. In cases in which the requirements of Practice Book § 64-1 have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. See *New Haven Savings Bank* v. *Mongillo*, 67 Conn. App. 799, 801–802, 789 A.2d 547 (2002). Nonetheless, this court may review an appellant's claim as long as there exists "a sufficiently detailed and concise statement of the trial court's findings." *Bank of America, FSB* v. *Franco*, 57 Conn. App. 688, 691 n.1, 751 A.2d 394 (2000). Here, the defendant filed an unsigned transcript of the court's ruling that provides a sufficiently detailed and concise statement of the court's finding for us to review his claims.

I

The defendant first claims that the court improperly determined that he violated a condition of his probation. One of the general conditions of the defendant's probation was that he not violate any criminal law of the United States, this state or any other state or territory. The defendant's probation violation was premised on his arrest on charges of threatening in the second degree and breach of the peace in the second degree in viola-

---

[7] The record before this court does not contain a written memorandum of decision or signed transcript regarding the trial court's judgment finding the defendant in violation of his probation and revoking his probation. See Practice Book § 64-1.

tion of General Statutes §§ 53a-62[8] and 53a-181,[9] respectively. The defendant, however, contends that because Rivera and DoCarmo were criminal trespassers, the court improperly concluded that he was not justified in using reasonable force in defense of his wife's premises. We disagree.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Citations omitted; internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 425, 773 A.2d 931 (2001).

We first review whether the court properly found that the defendant violated a condition of his probation. "A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there

[8] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

[9] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another . . . ."

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 425–26.

The defendant relies on General Statutes § 53a-20, which permits the use of reasonable force by a person who is privileged to be on the premises and who "reasonably believes [such force] to be necessary to prevent or terminate the commission . . . of a criminal trespass . . . ."[10] In order for that section to apply in this case, the victims, Rivera and DoCarmo, would need to have been criminal trespassers pursuant to General Statutes §§ 53a-107, 53a-108 and 53a-109.[11] The court concluded, to the contrary, that Rivera and DoCarmo were not on the premises as criminal trespassers.

[10] General Statutes § 53a-20 provides in relevant part: "A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises . . . ."

[11] General Statutes § 53a-107 (a) provides in relevant part: "A person is guilty of criminal trespass in the first degree when: (1) knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

General Statutes § 53a-108 (a) provides: "A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building."

General Statutes § 53a-109 (a) provides in relevant part: "A person is guilty of criminal trespass in the third degree when, knowing that he is not licensed or privileged to do so: (1) He enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders, or fenced or otherwise enclosed in a manner designed to exclude intruders, or which belong to the state and are appurtenant to any state institution . . . ."

The question of whether Rivera and DoCarmo were criminal trespassers is one of fact for the trial court to determine. See *State* v. *Garrison*, 203 Conn. 466, 473, 525 A.2d 498 (1987) (noting that court's conclusion that victim was not criminal trespasser was based on factual findings).[12] The court's determination that Rivera and DoCarmo were not criminal trespassers therefore was based on its factual findings that they entered the wife's residence with the sole purpose of repossessing her television. In addition, the court noted that neither Rivera nor DoCarmo had been charged with criminal trespass following their altercation with the defendant. In light of those factual findings, the court's conclusion that the victims' conduct did not constitute criminal trespass was not clearly erroneous.

The defendant also claims that because he was not convicted of assault in the third degree, his conduct in removing Rivera from the premises was reasonable and therefore lawful under § 53a-20. Rivera, however, was not a criminal trespasser; therefore, § 53a-20 does not apply. Because the court determined that Rivera was not a criminal trespasser, the defendant was not justified in using any force, reasonable or not, in expelling Rivera from the premises to defend against the removal of property without threat to a person.

Furthermore, criminal trespass requires, at a minimum, that a person enter or remain on the premises of another person "with the knowledge that he was not

---

[12] The defendant contends that the application of § 53a-20 to a series of facts is a question of law and therefore subject to plenary review. Indeed, whether a claim of self-defense under § 53a-20 applies to a charge of breach of the peace in the second degree and threatening in the second degree is a question of law. See *State* v. *Amado*, 254 Conn. 184, 197–98, 756 A.2d 274 (2000). That defense, however, is available only if the victim is determined to be a criminal trespasser. The question of whether the victim is a criminal trespasser is a question of fact and therefore subject to the clearly erroneous standard of review. See *State* v. *Garrison*, supra, 203 Conn. 473.

privileged or licensed to do so." *State* v. *Martin*, 35 Conn. Sup. 555, 564, 398 A.2d 1197 (1978); see also General Statutes §§ 53a-107, 53a-108, 53a-109.[13] Noting that requirement, we conclude that the court's determination that Rivera and DoCarmo were not criminal trespassers finds support in the facts. The court therefore properly determined that the defendant was in violation of probation because he violated the laws of Connecticut.

## II

The defendant's second claim is that the court abused its discretion by revoking his probation and sentencing him to three years incarceration. Specifically, the defendant argues that the court improperly considered his discharge from sex offender treatment in determining that his probation should be revoked. We disagree.

In regard to that claim, we review the second phase of the defendant's revocation of probation hearing, namely, whether probation should be revoked because the beneficial aspects of probation are no longer being served.

"The standard of review of an order revoking probation is whether the trial court abused its discretion; if it appears that the trial court was reasonably satisfied that the terms of probation had been violated, and, impliedly, that the beneficial purposes of probation were no longer being served, then the order must stand. . . . In making this determination, the trial court is vested with broad discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 255 Conn. 830, 844, 769 A.2d 698 (2001). "[E]xcept where an abuse of discretion is clearly shown, the conclusion of a trial court should be affirmed so long as it is a reasonable one on the basis of the evidence adduced and the inferences

---

[13] See footnote 11.

drawn therefrom." (Internal quotation marks omitted.) *State* v. *Moore*, 85 Conn. App. 7, 14, 855 A.2d 1006, cert. denied, 271 Conn. 937, 861 A.2d 510 (2004).

The record reveals the following additional facts, which are necessary to resolve the issue. On February 26, 2004, after determining that the defendant had violated his probation, the court held a sentencing hearing to determine if his probation should be revoked. At the hearing, all three of the defendant's former probation officers testified that the defendant had not satisfactorily met the condition of his probation requiring attendance at sex offender evaluation and treatment. On the basis of our review of the record, we agree.

According to the defendant's first probation officer, Renu Bains, the defendant had accumulated six unexcused absences, been tardy numerous times and refused to take responsibility for his offense, as required by the defendant's first treatment center, The Connection, Inc. According to the defendant's second probation officer, Keith R. Furniss, the defendant had attendance and tardiness problems and was disruptive to the group during treatment sessions. On September 12, 2001, The Connection, Inc., discharged the defendant from its treatment program because of his unexcused absences, tardiness, financial arrearage and failure to accept responsibility for his crime.[14] The defendant then was transferred to his second treatment center, The Sterling Center. Although the defendant initially was compliant with his new program, the defendant's third probation

---

[14] After the defendant was discharged from The Connection, Inc., in 2001, Furniss applied for a warrant for the defendant's arrest on the basis of that discharge. The court pretried the defendant on the violation of probation charge and asked Furniss to continue supervising the defendant pending the disposition of the case. After the defendant was transferred to a second treatment center, The Sterling Center, the court initially determined that he had been compliant with his new program and disposed of his case by continuing the probation.

officer, Tzepos, later received reports from The Sterling Center regarding the defendant's negative attitude, unexcused absences and financial arrearage. Finally, The Sterling Center discharged the defendant due to his September 4, 2003 arrest, poor attendance, unacceptable attitude toward therapy and continued refusal to accept responsibility for his prior sexual assault.

In his brief, the defendant contends that the court abused its discretion by relying on his discharge from The Sterling Center as the basis for revoking his probation. Specifically, the defendant claims that the only reason he was discharged from The Sterling Center's sexual offender treatment was because of his arrest on September 4, 2003, and therefore the beneficial purposes of his probation were still being served.

We find the defendant's argument without merit. On the basis of the testimony of the defendant's three probation officers, the court reasonably could have found that the defendant repeatedly violated the condition of his probation requiring sex offender treatment and therefore that the beneficial purposes of probation no longer were being served. Accordingly, we conclude that the court did not abuse its discretion in revoking the defendant's probation.

### III

The defendant's final claim is that he was not properly notified of the alleged violations of probation in violation of his due process rights. Specifically, the defendant contends that the court did not notify him that it would use his entire probation history, including sex offender treatment, in determining whether the beneficial purposes of his probation were being served. The defendant claims that had he known that, he would have subpoenaed therapists from The Sterling Center to give an assessment of his progress. We find the defendant's claim unconvincing.

The defendant admits that his claim may not have been properly preserved for appellate review and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree that the record is adequate for review and that the claim is of constitutional magnitude; therefore, we must determine whether the alleged constitutional violation clearly exists.

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation." (Citations omitted; internal quotation marks omitted.) *State* v. *Gauthier*, 73 Conn. App. 781, 789, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). "At [a probation violation] hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge . . . ." (Internal quotation marks omitted.) *State* v. *Maye*, 70 Conn. App. 828, 838, 799 A.2d 1136 (2002).

First, the defendant had ample notice of when his probation revocation hearing would occur. On December 23, 2003, the court stated that the probation revocation hearing would begin on January 30, 2004. The

defendant therefore had more than one month to subpoena his witnesses to show that he was amenable to continuing his treatment.[15] Second, the defendant had notice that the court planned to hold a sentencing hearing during which it would hear testimony about his probation history. On February 23, 2003, following the first phase of the defendant's probation hearing, the court stated that it would hold a sentencing hearing on February 26, 2003, to hear further evidence regarding whether the beneficial purposes of probation were being served. The defendant was thus on notice that the court wanted to hear evidence regarding his treatment at The Sterling Center.

A court can rely on the defendant's entire probationary history in determining whether the rehabilitative purpose of probation is no longer being served. In this case, the defendant was given the opportunity to challenge all of the alleged violations at his probation revocation hearing. We conclude, therefore, that the defendant received adequate notice regarding all of the grounds on which he ultimately was found to have violated his probation. See id., 839–40. Thus, a constitutional violation does not clearly exist, and the defendant was not deprived of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] When defense counsel complained that none of the service providers at The Sterling Center had testified about the defendant's rehabilitative

prospects, the court responded that the defendant had had ample time to subpoena them because "everyone knew about this hearing for months."